IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

MANGWIRO SADIKI-YISRAEL (3)

CRIMINAL ACTION FILE NO.

1:16-CR-145-TWT-JKL-3

## **ORDER AND NON-FINAL REPORT AND RECOMMENDATION**

This Order and Non-Final Report and Recommendation addresses the following pending motions filed by Defendant Mangwiro Sadiki-Yisrael:

- Defendant's Motion to Reopen Evidence Regarding Motion to Suppress Evidence [Doc. 1413]

- Defendant's Motion to Suppress Evidence and Request for Hearing Under *Franks v. Delaware* [Doc. 1414]

- Defendant's Motion to Strike or Dismiss the Enhanced Sentencing Provisions Listed in Count One [Doc. 1415]

- Defendant's Motion to Dismiss or Strike Overt Acts 1 and 3 of Count One Due to Denial of Speedy Trial [Doc. 1416]

- Defendant's Motion for Specific *Brady* Information [Doc. 1417]

- Defendant's Motion for Return of Property [Doc. 1418]

- Defendant's Preliminary Motion to Suppress All Conversations and Evidence Seized on (TT3) Pursuant to Court Ordered Electronic Interceptions [Doc. 1419]

For the reasons that follow, it is **ORDERED** that Sadiki-Yisrael's Motion for Specific *Brady* Information be **DENIED AS MOOT**, and it is **RECOMMENDED** that the remaining motions be **DENIED**.

## I.    BACKGROUND

Sadiki-Yisrael is charged in this case with RICO conspiracy (Count One) in violation of 18 U.S.C. § 1962(d).  [*See* Doc. 1.]  According to the indictment, Sadiki-Yisrael was a member of the Gangster Disciples, which the government alleges operated as a racketeering enterprise as defined by 18 U.S.C. § 1961(4). During the time period relevant to this case, Sadiki-Yisrael allegedly held the positions of "First Coordinator of the Marietta Count," "Assistant Governor of Georgia," and "Governor of Georgia," positions of local and state authority within the organization.[1]  [*Id.* at 3, 11.]  The indictment identifies specific overt acts that Sadiki-Yisrael is alleged to have committed in furtherance of the RICO conspiracy:

---

[1] According to the indictment, members of the Gangster Disciples are organized in geographic groups, each called a "count" or a "deck."  [Doc. 1 at 2.]

2

Between October 6, 2009, and March 15, 2010, Sadiki-Yisrael allegedly caused at least four fraudulent transactions to occur that resulted in excess of $26,013 being deposited into at least one account that he controlled.  [Doc. 1 at 17 (Overt Act 1).]

From November 1, 2010, through at least November 4, 2010, Sadiki-Yisrael and Gangster Disciples member J.S. allegedly caused at least four fraudulent transactions to occur that resulted in excess of $26,304 being deposited into at least one account controlled by J.S. [Doc. 1 at 18 (Overt Act 3).]

From February 19, 2013, through at least March 18, 2013, co-defendant Ronald McMorris and Sadiki-Yisrael allegedly caused at least five fraudulent transactions to occur that resulted in excess of $10,200 being deposited into at least one account controlled by McMorris.  [Doc. 1 at 20 (Overt Act 17).]

From June 20, 2013, through at least August 15, 2013, Sadiki-Yisrael and co-defendant Myrick Stevens allegedly caused at least three fraudulent transactions to occur that resulted in excess of $34,100 being deposited into at least one account controlled by Stevens.  [Doc. 1 at 21 (Overt Act 21).]

From July 24, 2013, through at least September 6, 2013, Sadiki-Yisrael and co-defendant Denise Carter allegedly caused at least eleven fraudulent transactions to occur that resulted in excess of $32,341 being deposited into at least one account controlled by Carter.  [Doc. 1 at 21-22 (Overt Act 22).]

---

Allegedly, a "Governor" is the highest-ranking member within a particular state and is aware of and coordinates much of the criminal activity occurring within that state.  [*Id.* at 3.]

3

From August 5, 2013, through at least September 5, 2013, Sadiki-Yisrael and co-defendant Thomas Pasby allegedly caused at least twenty-six fraudulent transactions to occur that resulted in excess of $83,918 being deposited into at least one account controlled by Pasby.  [Doc. 1 at 22 (Overt Act 23).]

From August 19, 2013, through at least September 25, 2013, Sadiki-Yisrael and co-defendants Arrie Freeney and Alonzo Walton allegedly caused at least six fraudulent transactions to occur that resulted in excess of $20,307 being deposited into at least one account controlled by Freeney.  [Doc. 1 at 22 (Overt Act 25).]

On or about September 12, 2013, Sadiki-Yisrael and co-defendant Jeremiah Covington allegedly caused at least one fraudulent transaction to occur that resulted in excess of $19,900 being deposited into at least one account controlled by Covington.  [Doc. 1 at 23 (Overt Act 28).]

Between September 19, 2013, and October 8, 2013, Sadiki-Yisrael and co-defendant Yohori Epps allegedly caused at least eight fraudulent transactions to occur that resulted in excess of $26,304 being deposited into at least one account controlled by Epps.  [Doc. 1 at 23 (Overt Act 30).]

Between October 4 and 21, 2013, Sadiki-Yisrael and co-defendant Kelvin Sneed allegedly caused at least six fraudulent transactions to occur that resulted in excess of $24,417 being deposited into at least one account controlled by Sneed.  [Doc. 1 at 23-24 (Overt Act 31).]

From October 18, 2013, through February 4, 2014, Sadiki-Yisrael and co-defendant Curtis Thomas allegedly caused at least thirty-eight fraudulent transactions to occur that resulted in excess of $108,536

being deposited into at least one account controlled by Thomas. [Doc. 1 at 24 (Overt Act 32).]

On or about December 25, 2013, Sadiki-Yisrael and co-defendants Shauntay Craig, Alonzo Walton, and Antonio Ahmad, and others allegedly secreted defendant Quiana Franklin from law enforcement after a stash house she ran was raided by police. [Doc. 1 at 25 (Overt Act 40).]

In January 2014, Walton allegedly recruited individuals to take part in the credit card and bank fraud scheme controlled by Sadiki-Yisrael. [Doc. 1 at 25 (Overt Act 41).]

On or about June 6, 2014, co-defendant Kevin Clayton asked Sadiki-Yisrael for a contact to help smuggle marijuana into a prison. [Doc. 1 at 27 (Overt Act 51).]

On or about September 19, 2014, defendant Ronald McMorris allegedly deposited $2700 into at least one bank account controlled by Sadiki-Yisrael. [Doc. 1 at 29 (Overt Act 64).]

At all times relevant to the indictment, co-defendant Michael Drummond allegedly provided names and account information to Sadiki-Yisrael to use in fraudulent transactions. [Doc. 1 at 40 (Overt Act 130).]

The indictment also provides notice of enhanced sentencing as to Sadiki-Yisrael.

[Doc. 1 at 41-42.]

On January 18, 2018, I issued an Order and Non-Final Report and Recommendation addressing all motions pending as of that date that Sadiki-Yisrael had filed. [Doc. 1320.] Afterward, new counsel was appointed to represent Sadiki-

Yisrael because his former counsel advised that he was winding down his law practice.  On March 26, 2018, with leave of Court, Sadiki-Yisrael filed additional pretrial motions, which are presently pending before the Court.  Those additional motions have been fully briefed and are now ripe for resolution.

## II.     MOTION TO REOPEN EVIDENTIARY HEARING [1413]

Sadiki-Yisrael previously moved to suppress evidence seized from his residence at 16 Camden Woods Place, Dallas Georgia (the "Residence").  [Docs. 1010, 1020.]  An evidentiary hearing was held on the motion, and following post-hearing briefing, I recommended that the motion to suppress be denied.  [Doc. 1320.]  Sadiki-Yisrael now moves to reopen the evidentiary hearing to introduce additional testimony "and/or" evidence to establish that the initial warrantless search exceeded the scope and duration of a permissible protective sweep. [Doc. 1413 at 4.]  He contends that the reasonableness of the protective sweep of the Residence is of critical importance as the evidence that officers observed during the sweep was used to establish probable cause to obtain a search warrant for the Residence.  [*Id.*]  The government opposes reopening the evidentiary hearing. [Doc. 1424.]  Sadiki-Yisrael has filed a reply, in which he states that he intends to call additional witnesses to the initial warrantless search, including "one or more lay witnesses," "one or more Fulton County [Georgia] SWAT team officer[s] who

6

[were] present during the initial entry," possibly "one or more federal or task force agent[s] who [were] involved in the initial entry into the home and the arrest of Mr. Sadiki-Yisrael," and possibly "one or more federal or task force agent[s] who [were] present during the afternoon search which was conducted with the search warrant in question."  [Doc. 1461 at 3.]  Sadiki-Yisrael goes on to argue that those witnesses will "establish and confirm that the so-called 'protective sweep' was in fact a search which exceeded the permissible scope under *Maryland v. Buie*."  [*Id.* at 4.]  Having considered the parties' briefs, the Court concludes that Sadiki-Yisrael's motion should be denied because he has failed to carry his burden to demonstrate that the hearing should be reopened.

The decision on whether to reopen or reconsider a suppression hearing is a matter of discretion for the Court.  *United States v. Watkins*, 760 F.3d 1271, 1284 (11th Cir. 2014); *United States v. Martin*, 400 F. App'x 536, 536-37 (11th Cir. 2010); *see United States v. Simms*, 385 F.3d 1347, 1356 (11th Cir. 2004)).  Though Sadiki-Yisrael contends that he wishes to reopen the hearing to "introduce additional testimony and/or evidence," he does not explain in sufficient detail what that evidence or testimony would be or why it was not available to him or presented at the initial suppression hearing.  *See United States v. McWhorter,* 380 F. App'x 965, 968 (11th Cir. 2010) (affirming denial of motion to reopen suppression hearing

where "the motion to reopen did not identify any additional evidence which would have made another hearing necessary").   Nor does he explain how the new testimony or evidence would lead to a different outcome on the motion to suppress. *Cf. United States v. Muhammad*, 340 F. App'x 548, 550 (11th Cir. 2009) (affirming denial of motion to reconsider because new testimony would not have led to a different outcome on the motion to suppress).   Absent even a preliminary showing that there is any specific new evidence, that there is evidence that was unobtainable at the initial hearing, or that there are new issues that became relevance since the initial hearing, the reopening of the suppression hearing is not warranted.   *See United States v. Diaz*, No. 1:09-CR-037-WBH-AJB, 2010 WL 5677193, at *7 (N.D. Ga. Dec. 30, 2010), *report and recommendation adopted,* 2011 WL 344093 (N.D. Ga. Jan. 31, 2011).   Accordingly, it is **RECOMMENDED** that Sadiki-Israel's Motion to Reopen Evidence Regarding Motion to Suppress Evidence [Doc. 1413] be **DENIED**.

## III.   MOTION TO SUPPRESS EVIDENCE [1414]

Sadiki-Yisrael has also filed what is, in effect, a renewed motion to suppress evidence seized pursuant to search warrants for the Residence, where he was arrested on May 4, 2016, and for a Pontiac Grand Prix (the "Vehicle") that was

8

located at the Residence. (*Id.*[2]). [Doc. 1414.] He first contends that paragraphs 6 through 19 of the affidavit supporting the warrants fail to establish probable cause. [*Id.* at 3-21.] Second, he argues that the *Leon*[3] good faith exception to the exclusionary rule does not apply. [*Id.* at 21-22.] Finally, he argues that the affidavit contains "material falsehoods or omissions" and that he is entitled to a *Franks*[4] hearing. [*Id.* at 22-24.] The government opposes the motion to suppress, arguing that the warrants were supported by probable cause and, in the alternative, that the *Leon* good faith exception applies. [Doc. 1445.] Sadiki-Yisrael has filed a reply. [Doc. 1463.]

### A.    Probable Cause Supports the Search Warrants

A judicial officer considering an application for a search warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him or her, there is a fair probability that contraband or

---

[2] The search warrant and application for the Residence is docketed at Doc. 1020-1, and the search warrant and application for the Vehicle is docketed at Doc. 1020-2. Because the affidavits in support of both search warrant applications are identical, the Court refers only to the affidavit in support of the search warrant for the Residence, Doc. 1020-1. References to pages of the search warrant materials are to the page numbers automatically generated by CM/ECF.

[3] *United States v. Leon*, 468 U.S. 897 (1984).

[4] *Franks v. Delaware*, 438 U.S. 154 (1978).

evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S.
213, 238 (1983). The Eleventh Circuit has "established the following guidelines
for determining the validity of a warrant affidavit: (1) demonstration of a
connection between the defendant and the location to be searched; (2)
demonstration of a link between the location and criminal activity; and (3)
demonstration of the informant's veracity and basis of knowledge." *United States
v. Davis*, 313 F.3d 1300, 1303 (11th Cir. 2002) (per curiam).

    The Eleventh Circuit has explained the Court's review of the sufficiency of
a search warrant and its supporting affidavit as follows:

> When called upon by law enforcement officials to
> determine the legitimacy of search warrants and their
> supporting affidavits, issuing magistrates and reviewing
> courts alike must strike a delicate balance between
> constitutional guarantees against excessive intrusions
> into areas of individual freedom and the Government's
> need to access and to secure relevant evidence in criminal
> prosecutions. In particular, issuing magistrates are given
> the unenviable task of making "firing line" decisions that
> attempt to encourage availment of the warrant process
> while simultaneously striving to protect citizens from
> unwarranted governmental interference. In recognition
> of the difficulty inherent in discharging this
> responsibility, reviewing courts lend substantial
> deference to an issuing magistrate's probable cause
> determinations.

*United States v. Miller*, 24 F.3d 1357, 1363 (11th Cir. 1994). "Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner." *Id.* at 1361 (citation omitted). Instead, "a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations." *Id.* (citations omitted).

The undersigned previously found that probable cause supported the issuance of the warrants because:

- Sadiki-Yisrael was found within the Residence when he was arrested, and the Vehicle was parked in the driveway within the curtilage of the Residence;

- the affidavit supporting the warrants indicated that the basement of the Residence contained items of Gangster Disciples paraphernalia, including photographs, a certificate of appreciation for "Iz", and a banner for "LTG radio";

- the affidavit noted that a jacket bearing the Gangster Disciples logo was discovered in a bedroom;

11

- regarding the Vehicle, the affidavit stated that agents observed a black bandana, which is commonly used by members of the Gangster Disciples, and on the hood of the car was a six-point star emblem, one of the symbols of the Gangster Disciples; and

- information was obtained from law enforcement agents, intercepted communications, and other reliable sources of information, such as bank records concerning alleged criminal activity.

Sadiki-Yisrael's new arguments do not change this conclusion.  In his new motion to suppress, Sadiki-Israel methodically discusses paragraphs 6 through 19 of the affidavit, taking each paragraph in isolation and explaining why each is insufficient to establish probable cause.  But examining each paragraph in a vacuum ignores that the Court's role is to review the affidavit as a whole and to determine whether, as a practical, commonsense matter, there is a fair probability that contraband will be found in a particular place.  Indeed, "the Supreme Court has warned lower courts of the error of not consider[ing an officer's] affidavit in its entirety and judging bits and pieces of information in isolation."  *United States v. Lebowitz*, 647 F. Supp. 2d 1336, 1345 (N.D. Ga. 2009) (alteration in original) (internal quotation marks omitted) (quoting *Massachusetts v. Upton*, 466 U.S. 727, 732 (1984) (per curiam)).

12

Even so, taking each of Sadiki-Yisrael's particularized arguments in turn, each is without merit.  He argues that there is nothing criminal about being associated with an organization, and that the First Amendment protects his freedom to associate with others.  [Doc. 1414 at 4-6, 12; Doc. 1462 at 7-9.]  But the Gangster Disciples organization is alleged to be a criminal enterprise, and Sadiki-Yisrael himself is alleged to have engaged in financial fraud in connection with the organization.

He similarly argues that "law enforcement officers do not have probable cause to search every residence or vehicle which contains blue clothing or a black bandana."  [Doc. 1414 at 6, 19, Doc. 1462 at 1-2.]  But the search warrant affidavit goes far beyond identifying the color of clothing, and provides great detail about symbols, terminology, colors and marks of identification that denote one's membership in the Gangster Disciples.

Sadiki-Yisrael also argues that a warrant to retrieve evidence of his alleged membership was unnecessary because the government already possessed ample evidence demonstrating that he was a member of the Gangster Disciples.  [Doc. 1414 at 12.]  This argument misstates the purpose of the search warrant.  The purpose of the search warrant affidavit was not just to recover evidence of his alleged association; rather, evidence of his association that officers saw in plain

13

view at the Residence and in the Vehicle were among the facts that established probable cause to believe that evidence of criminal activity would be found in his Residence and the Vehicle.

Sadiki-Yisrael also challenges the purported lack of detail concerning his alleged involvement in fraudulent financial transactions.  Specifically, he argues that paragraphs 12 and 13 do not provide specific dates and locations where he allegedly engaged in bank fraud and credit card fraud.  [Doc. 1414 at 13-14, Doc. 1462 at 3-4.]  He contends that paragraphs 14 and 15 of the affidavit—which state that Sadiki-Yisrael is heard on recorded telephone calls discussing and directing the alleged fraud scheme, stating that he would use a computer to check on a bank account, and making references to having and obtaining firearms—are insufficient because the affidavit does not establish when the calls were recorded and because the information about firearms and using a computer was stale.  [Doc. 1414 at 14-15.]  Likewise, paragraph 16 states that reliable source information corroborate that Sadiki-Yisrael used computers to further the fraud by communicating with conspirators and checking on the status of accounts through which fraudulent transactions were being funneled.  [Doc. 1414 at 15, Doc. 1462 at 4.]  He argues that this paragraph does not establish who the source is or why it is reliable.  [*Id.* at 16.]

14

These arguments ignore that the affidavit also relates that a grand jury found that there was probable cause to charge Sadiki-Yisrael with RICO conspiracy based on "an extensive bank fraud and credit card scheme involving fraudulent merchant accounts." [Doc. 1020-1 at 18.]  Since a grand jury already found probable cause to link Sadiki-Yisrael to the alleged fraud scheme, the affidavit need not provide a significant of level of detail concerning the scheme.  Moreover, these paragraphs must be read in context.  The affidavit describes how the alleged fraud scheme worked; that Sadiki-Yisrael had been indicted in connection with the scheme; that he was heard on recorded telephone calls in 2014 directing others, reciting conspirators, and discussing the scheme; that he stated that he would check on a bank account using his computer; and that he used computes to further the fraud by communicating with others and checking on the status of accounts.  [*Id.*]  The affidavit also indicates that records from Bank of America and Wells Fargo indicated that a computer was used to check on approximately a dozen accounts belonging to or controlled by Sadiki-Yisrael that were allegedly involved in the fraud.  [*Id.* at 20.]

Sadiki-Yisrael's assertion that the information provided in the affidavit is stale is also without merit.  "[T]he information supporting the government's application for a warrant must show that probable cause exists at the time the

warrant issues." *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000).

"[T]here is no mathematical measure for when freshness fades away and staleness

sets in." *United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011).  Rather,

whether information is stale depends on the unique facts of the case.  The Eleventh

Circuit has explained:

> When reviewing staleness challenges we do not apply
> some talismanic rule which establishes arbitrary time
> limitations for presenting information to a magistrate,
> rather, we review each case based on the unique facts
> presented.  In this case-by-case determination we may
> consider the maturity of the information, nature of the
> suspected crime (discrete crimes or ongoing conspiracy),
> habits of the accused, character of the items sought, and
> nature and function of the premises to be searched.

*United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (quotations and citations

omitted).

Regardless of whether the information about a possible firearm was stale,

the nature of the evidence sought in this warrant—including computer and digital

evidence—weighs against a finding of staleness.  *See United States v. Harvey,* No.

1:15-CR-00053-TWT-RGV-1, 2015 WL 9685908, at *19 (N.D. Ga. Nov. 30,

2015), *report and recommendation adopted*, 2016 WL 109984 (N.D. Ga. Jan. 8,

2016).  The warrant application sought authorization to seize electronically stored

information, which, according to the affidavit, can be recovered "months or even

16

years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet." [Doc. 1020-1 at 21.]

Finally, Sadiki-Yisrael objects that paragraph 17 is boilerplate and "does little to further the probable cause with respect to the Residence in question." [Doc. 1414 at 17-18; *see also* Doc. 1462 at 5-6.] He argues that the paragraph does not provide adequate details about his living situation, nor was there evidence that the Residence was his "primary residence," a "hide-out," or a place where he stored evidence of fraud. [Doc. 1414 at 17-18; Doc. 1462 at 5-6.] This argument is not persuasive. The affidavit states that Sadiki-Yisrael had been indicted for RICO conspiracy based on his alleged involvement in financial fraud and that the affiant, FBI Special Agent Buddy E. Early, through his familiarity with such schemes, believed that such individuals often maintain records both in hard copy and electronic format at their "residences or 'hideout.'" [Doc. 1020-1 at 19.] There is no dispute that Sadiki-Yisrael had some sort of living arrangement at the Residence, regardless of whether it was his primary residence or his girlfriend's house. The affidavit further relates that individuals who are engaged in fraud schemes like the one that Sadiki-Yisrael was indicated on typically store evidence relating to the activity in locations where they reside or in a hideout. Even if the affidavit uses standard-form language, the language, when read in context, is

17

sufficient to connect the alleged criminal activity and Sadiki-Yisrael to the Residence.

In sum, for the above reasons, the Court concludes that probable cause supports the issuance of the warrants for the Residence and the Vehicle.

### B. Even if the Warrants Were Not Supported by Probable Cause, Law Enforcement Acted in Good Faith

The government argues in the alternative that even if probable case were lacking, the evidence obtained from the Residence and the Vehicle should not be suppressed under *United States v. Leon* because law enforcement relied on the warrant in good faith. [Doc. 1445 at 9-10.] Sadiki-Yisrael argues that *Leon* is not applicable because the affidavits supporting the warrants consisted of boilerplate and were not tailored to the evidence in this investigation, such that when the magistrate judge issued the warrants, she acted as a "rubber stamp for police." [Doc. 1414 at 21-22.]   Due to the advisory nature of this report and recommendation, the Court addresses this argument and finds that, even if probable cause was lacking, the *Leon* exception to the exclusionary rule applies.

In *Leon,* the Supreme Court recognized a good-faith exception to the exclusionary rule for searches conducted pursuant to warrants.  Observing that the purpose of the exclusionary rule is to deter unlawful police conduct, the Court

found that this purpose would not be served, and the exclusionary rule should not be applied, when an officer, acting with objective good faith, has obtained a search warrant from a judge and acted within its scope. *See Leon*, 468 U.S. at 920-21. Nonetheless, the *Leon* Court noted four situations in which the suppression of evidence would still be appropriate: (1) when the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) when the judicial officer wholly abandons his judicial role; (3) when the warrant is issued on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) when the warrant is so facially deficient that an officer could not reasonably presume it to be valid. *Id.* at 923.

Contrary to Sadiki-Yisrael's argument, the affidavit supporting the warrants were sufficiently specific such that law enforcement reasonably relied on the warrants. Nor is there any basis to believe that the magistrate judge who issued the warrants abandoned her "judicial role" in issuing the warrants. Accordingly, even if probable cause did not exist to support the issuance the warrants, suppression is not required under *Leon*'s exception to the exclusionary rule.

19

### C.    Sadiki-Yisrael is Not Entitled to a *Franks* Hearing

Sadiki-Yisrael also argues that he is entitled to a hearing under *Franks v. Delaware* because the search warrant affidavit contained "material falsehoods or omissions," including:

- The affidavit failed to disclose that the government already possessed extensive evidence of Sadiki-Yisrael's membership in and association with the Gangster Disciples.

- The affidavit omitted information demonstrating that the warrants were stale, namely, that the alleged fraud occurred in 2009 and 2010, that Sadiki-Yisrael had been indicated for those offenses in 2013, and that the last fraud-related overt act allegedly involving Sadiki-Yisrael allegedly occurred on September 19, 2014.

- The affidavit omitted that the Residence was actually Sadiki-Yisrael's girlfriend's home, and he was just an "overnight guest" there.

- The affidavit misrepresented that evidence was observed in connection with a "protective sweep," when, in fact, the sweep was a full-blown warrantless search.

[Doc. 1414 at 22-24, Doc. 1462 at 11-14.]  The Court disagrees.

Affidavits supporting arrest warrants are presumptively valid. *Franks*, 438 U.S. at 171. A defendant may challenge a facially sufficient affidavit, however, if he can show that it contains misrepresentations or omissions that were knowingly or recklessly made. *Id.* at 155-56, 171. To be entitled to relief, a defendant must show both (1) that the alleged misrepresentations or omissions were knowingly or recklessly made and (2) that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for the issuance of the warrants. *United States v. Novaton*, 271 F.3d 968, 986-87 (11th Cir. 2001). Based on the second requirement, a defendant is not entitled to a hearing unless he shows that but for the falsified facts there would not have been probable cause to issue the warrant. *Franks*, 438 U.S. at 171-72; *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). It is appropriate, therefore, for a court to analyze a *Franks* motion by removing the allegedly tainted information and inserting any alleged material omission, and then denying the motion if the affidavit, as amended, would nonetheless establish probable cause. *United States v. Kapordelis*, 569 F.3d 1291, 1309-10 (11th Cir. 2009).

None of the alleged deficiencies justifies a *Franks* hearing in this case for the reasons discussed above. First, the fact that the government already had evidence linking Sadiki-Yisrael to alleged criminal activity does not in any way

negate probable cause.  Second, his arguments that the information was stale are not persuasive for the reasons stated above.  Third, as discussed above, it makes no difference that Plaintiff's girlfriend owned the Residence and that law enforcement believed (or had evidence to believe) that he also maintained a residence elsewhere. Finally, his argument that the government mischaracterized the initial search as a "protective sweep" fails because the initial search in fact was, in fact, a constitutional protective sweep.

### D.    Summary

For the above-stated reasons, it is **RECOMMENDED** that Sadiki-Yisrael's Motion to Suppress Evidence and Request for Hearing Under *Franks v. Delaware* [Doc. 1414] be **DENIED**.

## IV.   MOTION TO STRIKE OR DISMISS THE ENHANCED SENTENCING PROVISIONS LISTED IN COUNT ONE [1415]

Sadiki-Yisrael moves to strike and dismiss the "Notice of Enhanced Sentencing" provision in the indictment, Paragraphs 136 and 137.  [Doc. 1415.]  In Paragraph 136, the indictment alleges that Sadiki-Yisrael and other co-defendants joined and remained in the RICO conspiracy charged in Count One knowing and agreeing that members of the enterprise engaged in acts involving murder, in

violation of O.C.G.A. § 16-5-1.  [Doc. 1 at 41, ¶ 136.]  In Paragraph 137, the

indictment alleges that Sadiki-Yisrael and other co-defendants

> joined and remained in the RICO conspiracy charged in
> Count One knowing and agreeing that members of the
> enterprise manufactured, distributed, and possessed with
> the intent to distribute controlled substances including
> more than 500 grams of a mixture and substance
> containing a detectable amount of methamphetamine, a
> Schedule II controlled substance; more than one
> kilogram of a mixture and substance containing a
> detectable amount of heroin, a Schedule I controlled
> substance; and more than five kilograms of a mixture and
> substance containing a detectable amount of cocaine, a
> Schedule II controlled substance; any of which
> constitutes a violation of Title 21, United States Code,
> Section 841, Section 841(b)(1)(A), and Section 846[.]

[*Id.* at 42, ¶ 137.]

Sadiki-Yisrael contends that those provisions fail to state a crime or penalty

and fail to adequately notify him of the charges against him.  [Doc. 1415 at 2.]  He

also contends that the enhanced sentencing "provisions lack the essential element

of proximate cause, constitutionally required under the Fifth and Sixth Amendment

to subject the Defendant to a Life sentence for murder or 10 year mandatory

minimum for drug crimes he did not commit, aid, abet or conspire to commit."  [*Id.*

at 3.]  He additionally maintains that the "Enhanced Penalty" provisions amount to

cruel and unusual punishment under the Eighth Amendment. [*Id.*] Finally, he argues that the notice of enhanced sentencing is surplusage. [*Id.* at 3-4.]

The government responds that the indictment charges a statutorily available penalty for RICO conspiracy. [Doc. 1442 at 3-5.] The government also argues that RICO conspiracy does not require proof of any completed racketeering act, and thus no element of proximate cause. [*Id.* at 5-6.] As to Sadiki-Yisrael's Eighth Amendment challenge, the government argues that it is not ripe at this pretrial stage of the case and, even if it were ripe, his challenge is without merit. [*Id.* at 6-7.] Finally, the government argues that the notice of enhanced sentencing is not surplusage because it properly gives defendants notice of the enhanced sentence that they may validly face. [*Id.* at 8-9.]

Sadiki-Yisrael has filed a reply in support of his motion. [Doc. 1463.]

The Court rejects Sadiki-Yisrael's argument that the enhanced penalty provisions should be stricken because they fail to adequately state a crime or penalty under 18 U.S.C. §§ 1962(d) or 1963(a) or adequately notify him of the charges and potential penalties against him. Section 1963(a) provides that a person who violates any provision of section 1962, shall be imprisoned for not more than twenty years, provided, however, that the maximum term of imprisonment is life "if the violation is based on a racketeering activity for which the maximum penalty

includes life imprisonment."  18 U.S.C. § 1963(a).  Here, the indictment alleges predicate offenses that carry a maximum penalty of life imprisonment, including trafficking large quantities of drugs under 21 U.S.C. § 841 and murder under O.C.G.A. § 16-5-1.  *See* 21 U.S.C. § 841(b)(1)(A) (imposing penalty of not less than ten years nor more than life for trafficking more than minimum quantities of methamphetamine, heroin, or cocaine); O.C.G.A. § 16-5-1(e)(1) (imposing penalty of death or life imprisonment for murder).

Sadiki-Yisrael nonetheless maintains that "the enhanced penalty provisions require a more personal and specific theory of liability than that provided in the indictment."  [Doc. 1463 at 5-6.]  He points out that the indictment does not allege that he was specifically involved in or agreed to commit acts of murder or large-scale drug trafficking.  [*Id.* at 3-4.]  In short, he contends that RICO is not designed to punish one's status if merely associating with coconspirators, but instead specific conduct.  [*Id.* at 3.]  He additionally argues that the government's attempt to saddle him with enhanced penalties for predicate acts that he is not alleged to have committed or agreed to commit violates due process because the government is applying a "novel construction" of criminal statutes.  [*Id.*]

The RICO conspiracy statute makes it "unlawful for any person to conspire to violate the provisions of [the prohibited activity stated in the RICO statute]."  18

U.S.C. § 1962(d).  "To establish a RICO conspiracy violation under 18 U.S.C. § 1962(d), the government must prove that the defendants objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes."  *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995) (citation omitted).  As the Seventh Circuit has explained:

> Section 1962(d), like all conspiracy provisions, has as its target the act of agreement—here, the agreement to engage in activity that implicates section 1962(c). Accordingly, to list adequately the elements of section 1962(d), an indictment need only charge—after identifying a proper enterprise and the defendant's association with that enterprise—that the defendant knowingly joined a conspiracy the objective of which was to operate that enterprise through an identified pattern of racketeering activity . . . . Neither overt acts, nor specific predicate acts that the defendant agreed personally to commit, need be alleged or proved for a section 1962(d) offense.

*United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991) (internal citations omitted); *accord Starrett*, 55 F.3d at 1543 ("The focus is on the agreement to participate in the enterprise through the pattern of racketeering activity, not on the agreement to commit the individual predicate acts.").  The government may prove a defendant's agreement in two ways: (1) by showing an agreement on an overall objective, or (2) by showing that a defendant agreed personally to commit two

26

predicate acts and therefore to participate in a "single objective" conspiracy. *Starrett*, 55 F.3d at 1544 (citation and quotation marks omitted).

Here, Sadiki-Yisrael is alleged to have held various leadership roles within the Gangster Disciples organization, and, thus, the government contends, he was aware of and approved of criminal activity carried out by members of the organization.   Those acts included, among other things, murder and drug trafficking, which carry penalties of up to life imprisonment.  As noted, Sadiki-Yisrael need not have direct involvement in such criminal activity to be subject to an enhanced penalty; rather, the government need only establish that he agreed with others to conduct the affairs of the organization through a pattern of racketeering activity that included those predicate acts.

Sadiki-Yisrael's second argument, that the notice of enhanced sentencing lacks probable cause, is similarly without merit because the government need not prove that the defendant, or indeed any coconspirator, completed a racketeering activity.  Rather, as stated above, "[t]o convict a defendant of . . . RICO conspiracy, the Government must prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in

the agreement (that he was a member of the conspiracy)." *Smith v. United States*,

568 U.S. 106, 110 (2013).[5]

Sadiki-Yisrael's third argument based on the Eighth Amendment is not ripe

because his criminality has not been established. "Eighth Amendment challenges

are generally not ripe until the imposition, or immediately impending imposition,

of a challenged punishment or fine." *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th

Cir. 1995). Sadiki-Yisrael has not pled or been found guilty, and those events may

never occur. Accordingly, Sadiki-Yisrael's argument is premature at this stage in

the proceedings. *See United States v. Hernandez-Gonzalez*, No. 16-20669-CR,

---

[5] In his reply, Sadiki-Yisrael briefly contends that the government has engaged in what "appears to be selective prosecution or an equal protection violation" by subjecting Sadiki-Yisrael to an enhanced sentence, but not other putative members of the Gangster Disciples organization. [Doc. 1463 at 7.] This argument is without merit. Selectivity in enforcement of a federal criminal statute does not violate the constitution unless the government deliberately bases its decisions on an invidious classification such as race or religion. *See United States v. Brantley*, 803 F.3d 1265, 1271 (11th Cir. 2015). The defendant asserting that he was selectively prosecuted bears a heavy burden to "(1) mak[e] a prima facie showing that he has been singled out for prosecution although other similarly situated persons who have committed the same acts have not been prosecuted; and (2) demonstrate that the government's selective prosecution was unconstitutional because actuated by impermissible motives such as racial or religious discrimination." *United States v. Jennings*, 991 F.2d 725, 730 (11th Cir. 1993) (citation omitted). Sadiki-Yisrael has made no showing that he has been singled out or that the government has taken action based on an improper purpose. Accordingly, Sadiki-Yisrael's selective prosecution argument fails.

2017 WL 2954676, at *8 (S.D. Fla. June 26, 2017) (recommending denying motion to dismiss based on Eighth Amendment challenge because defendant's criminality had not been established), *report and recommendation adopted*, 2017 WL 3446815 (S.D. Fla. Aug. 10, 2017).

Finally, Sadiki-Yisrael's argument that the notice of enhanced sentencing should be stricken as surplusage is without merit. Federal Rule of Criminal Procedure 7(d) authorizes the Court to "strike surplusage from the indictment or information." The Advisory Committee Notes to Rule 7(d) explain that the rule is intended to be "a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Language should not be stricken, however, "unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a most exacting standard." *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (internal quotations and citation omitted). For the reasons discussed above, the notice of enhanced sentencing is relevant to the RICO conspiracy charge against Sadiki-Yisrael. In addition, it cannot be said that the notice is prejudicial to him; indeed, as the government points out, the notice advises him of the enhanced sentence that he may face if convicted.

29

For the foregoing reasons, it is **RECOMMENDED** that Sadiki-Yisrael's Motion to Strike or Dismiss the Enhanced Sentencing Provisions Listed in Count One [Doc. 1415] be **DENIED**.

## V.   MOTION TO DISMISS OR STRIKE OVERT ACTS 1 AND 3 OF COUNT ONE DUE TO DENIAL OF SPEEDY TRIAL [1416]

Sadiki-Yisrael moves to dismiss or strike overt acts 1 and 3 on the grounds that those acts formed the basis of charges against him in a previous criminal indictment pending in this district, *United States v. Mangwiro Sadiki-Yisrael*, No. 1:13-cr-304-1 (N.D. Ga.) (the "2013 Case"), on which he was never arrested and which the government did not prosecute against him.  [Doc. 1416 at 2.]  He maintains that the delay in the previous case was prejudicial because three years passed between when he was indicted in that case and when he was arrested on the indictment in the present case.  [*Id.* at 3-5.]

The government responds that Sadiki-Yisrael's motion is moot because after Sadiki-Yisrael filed his motion, the government moved to dismiss Sadiki-Yisrael from the 2013 Case, which the Court granted the following day.  [Doc. 1455 at 2-3.]  The government argues that since "Sadiki-Yisrael has not alleged any Speedy Trial violations in the instant case", and the charges in the earlier case have been dismissed.  [*Id.*]

30

In reply, Sadiki-Yisrael responds that he is, in fact, alleging a Speedy Trial violation in this case and that dismissal of the charges in the 2013 Case does not moot the issue because, in measuring the length of delay for Speedy Trial Act purposes, the starting point is the initial indictment, not a superseding indictment or a new indictment following a dismissal. [Doc. 1465 at 2.] He goes on to argue that a five-year gap between the indictment in the 2013 Case and the present is presumptively prejudicial; thus, overt acts 1 and 3 should be struck or dismissed from the indictment. [*Id.* at 2-6.]

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. Const. amend. VI. To determine whether a defendant's right to a speedy trial has been violated, courts consider (1) the threshold question of the length of the delay, (2) the government's reasons for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003) (citing *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972)). Significantly, "[t]he Sixth Amendment's Speedy Trial Clause does not attach before a defendant is accused or arrested." *U.S. v. Derose*, 74 F.3d 1177, 1185 (11th Cir. 1998) (citing *United States v. Marion*, 404 U.S. 307 (1971)).

31

As noted, Sadiki-Yisrael maintains that he faces unfair prejudice of a constitutional dimension because the government sat on the indictment in the 2013 Case, only to use the same underlying facts to support two of the overt acts in this case. Though the Court agrees that the government's act of dismissing the earlier case does not "moot" Sadiki-Yisrael's motion, Sadiki-Yisrael's motion should be denied for at least two reasons.

First, it is not clear that striking overt acts is a remedy for an alleged violation of the Speedy Trial Clause of the Sixth Amendment. The Supreme Court has repeatedly stated that "the only possible remedy" for a violation of a defendant's right to a speedy trial right is dismissal of the charges. *Barker*, 407 U.S. at 522; *see also Betterman v. Montana*, 136 S. Ct. 1609, 1615 (2016); *Strunk v. United States*, 412 U.S. 434, 440 (1973). Sadiki-Yisrael cites no authority for the proposition that striking or "dismissing" an overt act is a remedy for a purported Speedy Trial violation, especially where, as here, the overt acts themselves are not elements of the charged offense. *See Salinas v. United States*, 522 U.S. 52, 63 (1997) (overt acts are not elements of a RICO conspiracy).

Second, and more fundamentally, even if striking portions of an indictment were a cognizable remedy, the Sixth Amendment's Speedy Trial Clause is not implicated under the facts of this case because the RICO conspiracy charge is a

separate and distinct offense from those charged in the prior action.  Specifically, in the 2013 Case, Sadiki-Yisrael was initially charged with three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 and three counts of identity theft in violation of 18 U.S.C. §§ 1028A and 2 arising out of transactions that allegedly occurred in October 2009.  [Doc. 1465-1.]  The government later obtained a superseding indictment that charged him with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; twenty-two counts of wire fraud; and eight counts of aggravated identity theft, all arising out of alleged fraudulent transactions that occurred September and October 2009, March 2010, and November 2010.  [Doc. 1465-2.]  The indictment in this case does not charge Sadiki-Yisrael with those offenses.  Rather, in this case, he is charged with a single count of RICO conspiracy.  [Doc. 1.]  Conspiracy to commit wire fraud, wire fraud, and aggravated identity theft are distinct and separate offenses from a RICO conspiracy, even if based on the same underlying facts.  *See United States v. Gotti*, 593 F. Supp. 2d 1260, 1266 (M.D. Fla. 2008) ("Indisputably the RICO conspiracy and the RICO substantive offense are different offenses.") (citing *Pinkerton v. United States*, 328 U.S. 640, 643-44 (1946)).  Since Sadiki-Yisrael was not charged with RICO conspiracy until April 28, 2016, he cannot complain that any delay in arresting and prosecuting him for the charges in the prior action violated his

constitutional right to a speedy trial in this case. *See Derose*, 74 F.3d at 1185; *see also United States v. Jones*, No. 8:14-CR-306-T-36MAP, 2014 WL 5454459, at *4 (M.D. Fla. Oct. 27, 2014) (holding that defendant did not have a constitutional right to a speedy trial as to offenses with respect to which he was never previous accused or arrested).

For these reasons, it is **RECOMMENDED** that Sadiki-Yisrael's Motion to Dismiss or Strike Overt Acts 1 and 3 of Count One Due to Denial of Speedy Trial be **DENIED**.

## VI.   MOTION FOR SPECIFIC BRADY INFORMATION [1417]

Sadiki-Yisrael advises the Court that in response to his Motion for Specific *Brady* Information [Doc. 1417], the government has provided information that satisfies his request. [Doc. 1464 at 1-2.] Accordingly, it is **ORDERED** that Sadiki-Yisrael's Motion for Specific *Brady* Information [Doc. 1417] be **DENIED AS MOOT**.

## VII.  MOTION FOR RETURN OF PROPERTY [1418]

Sadiki-Yisrael moves to the return all the property that the government seized from the Residence. [Doc. 1418 at 1.] He additionally requests the return of specific items, including (1) a video recorder that contains a "birthing video" of his child; (2) computer hard drives that contain digitized music; (3) personal

34

photographs and videos of himself, his girlfriend, and their child; and (4) children's electronic toys, tablets, video games, and a video game console. [*Id.* at 3.] The government responds that the motion should be denied because the government lawfully searched and seized the property from the Residence. [Doc. 1456.] Sadiki-Yisrael has filed a reply in which he concedes that if the motion to suppress evidence seized from the Residence is denied, then the government may retain possession of lawfully obtained evidence. [Doc. 1466 at 1-2.] He nonetheless maintains that the government should return items of a personal nature, including the birthing video, the hard drives, the personal photographs, and children's electronic toys. [*Id.* at 2.]

Federal Rule of Criminal Procedure 41(g) provides that

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

As a preliminary matter, the Court must reject the government's assertion that the motion for return should be denied solely because the search was not unlawful. Rule 41(g) authorizes a motion to return property on behalf of any "person

35

aggrieved by an unlawful search and seizure of property **or by the deprivation of property**. *Id.* (emphasis added). Thus, a person may move for the return of property where it has been lawfully seized but unreasonably retained by the government. *See United States v. Zambrano*, 353 F. App'x 227, 228 (11th Cir. 2009).

Nevertheless, it is the defendant who bears the burden of establishing under Rule 41(g) that the retention of the property is unreasonable while the prosecution is ongoing. *United States v. Nelson*, 190 F. App'x 712, 714 (10th Cir. 2006); *see also United States v. Young*, No. 1:07-CR-0114-BBM, 2008 WL 11383978, at *5 (N.D. Ga. July 1, 2008) (when the prosecution is ongoing, the defendant bears the burden to show that he is entitled to a return of the property). Sadiki-Yisrael has not met that burden here. He asserts that a video recorder and "various computer hard drives" should be returned to him because they contain material of a personal nature; however, he has not presented any evidence, or indicated that he could present evidence, that those devices contain only personal materials of no evidentiary value. Likewise, his assertion that the government has seized children's electronic devices is insufficient because, apart from a PlayStation video game console, he does not specify what devices the government has seized. In addition, as with the video recorder and hard drives, he does not point to or proffer any evidence that those devices or their contents lack evidentiary value. Finally,

36

Sadiki-Yisrael's request for the return of digital personal photographs and video recordings of himself, his girlfriend, and their child is too broad and vague. As a threshold matter, it is unclear whether he is seeking the return of digital images and videos depicting the three of them together, or whether he is requesting the return of any images or videos in which any one of them appears. Obviously, photographs that depict Sadiki-Yisrael either alone or even with others may have significant evidentiary value. Also, he does not specify the devices on which the images and videos appear, leaving the government and the Court with no guidance as to where the digital files are stored. Without greater specificity, the Court is reluctant to send the government on a hunt for digital photographs and recordings that Sadiki-Yisrael deems to be personal. Accordingly, at this point, the Court cannot find that Sadiki-Yisrael is entitled to wholesale "return" of personal images and videos.[6]

For the foregoing reasons, it is **RECOMMENDED** that Sadiki-Yisrael's Motion for Return of Property [Doc. 1418] be **DENIED**.

---

[6] It may well be the case that copies of these images have been provided to defense counsel in discovery, for example, if they were obtained by imaging a cell phone or a hard drive. But without greater clarity concerning where the photographs and videos reside and specificity concerning which images Sadiki-Yisrael is requesting, the Court should not order the government to "return" them at this time.

## VIII.  PRELIMINARY MOTION TO SUPPRESS ALL CONVERSATIONS AND EVIDENCE SEIZED ON (TT3) PURSUANT TO COURT ORDERED ELECTRONIC COMMUNICATIONS [1419]

Pursuant to an order of this Court, Sadiki-Yisrael was intercepted on Target Telephone 3 ("TT3") in connection with the investigation of the Gangster Disciples.[7]  [*See* Doc. 1467-1.]  FBI Task Force Officer William K. Murdock provided the affidavit in support of the application for the order authorizing the wiretap.  [*Id.* at 1-62.]

Sadiki-Yisrael moves to suppress communications and evidence intercepted on TT3.  [Doc. 1419.]  Though this is his second motion to suppress such evidence,[8] he requests time to supplement the preliminary motion because his review of the discovery and "his investigation of the subject matter of this motion are incomplete."  [*Id.* at 1.]  He generally asserts that he has standing to challenge the interceptions and that he "moves to suppress any and all conversations he is a party to upon the grounds that the court ordered wiretaps were conducted without

---

[7] Neither party filed the order authorizing the wiretap.  Instead, Sadiki-Yisrael has filed the affidavit supporting the application for the wiretap [Doc. 1467-1 at 1-62] and the order sealing a disc containing recordings of the intercepted communications [*id.* at 63-65.]  There is no dispute, however, that the Court signed an order authorizing the wiretap on February 18, 2014.  [*See id.* at 63.]

[8] *See* Doc. 1012 (Defendant Sadiki-Yisrael's Motion to Suppress Intercepted Communications Pursuant to Title III).

38

compliance with Title 18 U.S.C. Sections 2518 and 2510 et seq." [*Id.* at 2-3.] He further contends, generally, that the affidavit supporting the wiretap failed to establish necessity for the wiretaps or that less intrusive means would not meet the goals of the investigation.[9] [*Id.* at 3; *see also* Doc. 1467 at 3-6.]

The government has responded to the motion. [Doc. 1448.] Sadiki-Yisrael has filed a reply brief, in which he argues that the government failed to strictly adhere to the statutory mandate that it provides full and complete statement as to whether other investigative procedures have been tried and that Officer Murdock failed to adequately summarize law enforcement's use of confidential human sources in the investigation. [Doc. 1467 at 3-6.]

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-22, regulates the government's interception and disclosure of electronic surveillance or "wiretaps." *See United States v. Degaule*, 797 F. Supp. 2d 1332, 1346 (N.D. Ga. 2011), *adopted at* 1344. Title III sets out numerous requirements that wiretap applications and orders authorizing wiretaps must meet

---

[9] Sadiki-Yisrael initially asserted that the "underlying warrant affidavits contained material falsehoods and omissions and are subject to a *Franks* challenge" [Doc. [1419 at 3]; however, in his reply brief, he concedes that he does not currently possess enough information or evidence to prevail on a *Franks* challenge [Doc. 1467 at 2-3]. Accordingly, the courts deems that argument abandoned.

to be valid, including that an application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  If, based on that application, the district court determines that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous," the court may authorize the wiretap.  *Id.* at § 2518(3)(c).  This so-called "necessity requirement" is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed.  *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986).  It is not necessary, however, to demonstrate a "comprehensive exhaustion of all possible techniques."  *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984) (quotation omitted).

"[A] wiretap order is presumed to be valid, and a defendant has the burden of overcoming this presumption and of proving that the wiretap order was unlawfully obtained."  *United States v. Flores*, No. 1:05-cr-558-WSD-JFK, 2007 WL 2904109, at *22 (N.D. Ga. Sept. 27, 2007), *adopted at* *1-15.  A reviewing court must evaluate a wiretap affidavit in a "common sense fashion," using "flexible standards."  *United States v. Harrell*, 635 F. App'x 682, 685 (11th Cir. 2015) (citing *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978)).  "The

affidavit must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.   However, the government is not required to comprehensively exhaust all possible investigative techniques before applying for a wiretap." *Id.* (citing *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1214 (11th Cir. 2010)).

Suppression of the contents of an intercepted wire or oral communication is warranted if: (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval.   18 U.S.C. § 2518(10)(a); *see also id.* § 2515 (providing for suppression of communications intercepted in violation of Title III).   In general, courts assess whether the government has failed to satisfy "any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 527 (1974); *see also Van Horn*, 789 F.2d at 1500.

Sadiki-Yisrael's motion should be denied.   First, Sadiki-Yisrael has already litigated suppression issues relating to TT3, and the Court has recommended that

the motion be denied.  [Doc. 1134 at 32.]  The Court sees no basis to revisit, much less change, its prior decision based on the additional briefs.

Second, the additional arguments that Sadiki-Yisrael are not properly presented.  The Court ordered that Sadiki-Yisrael file any additional pretrial motions by March 26, 2018, over the government's objection. Sadiki-Yisrael filed what he styled a "preliminary" motion to suppress, which provided no particularized basis for suppression of evidence.  Sadiki-Yisrael has also not given an adequate explanation as to why he was unable to file a perfected motion within the time period allowed by the Court, especially since that time period the Court granted was requested by Sadiki-Yisrael himself.  The only reason given is that discovery is voluminous and his investigation is ongoing; however, he does not explain why that prevents him from filing a perfected motion.

Sadiki-Yisrael instead waited until his reply brief to raise substantive argument that the affidavit supporting the application for TT3 did not make a sufficient showing of necessity.  Though it is not appropriate to raise new arguments in a reply brief, the Court nevertheless addresses this argument and finds that even if it had been properly presented, it would fail.  Sadiki-Yisrael argues that the affidavit supporting the wiretap application is deficient because the agent "used boilerplate language and conclusory statements" concerning law enforcement's

42

prior use to confidential human sources and cooperating sources.  [Doc. 1467 at 5-6.]  He also contends that "during the agent's investigation, law enforcement identified more than 100 suspected Gangster Disciple members" but withheld their identity from the Court.  The Court disagrees.

A supporting wiretap application must "show with specificity why *in this particular investigation* ordinary means of investigation will fail."  *United States v. Dooley*, No. 1:11-cr-00255-TWT-RGV, 2013 U.S. Dist. LEXIS 81225, at *55 (N.D. Ga. Jan. 30, 2013) (rejecting argument that wiretap affidavits failed to demonstrate necessity where some investigatory techniques had been successful), *adopted*, 2013 U.S. Dist. LEXIS 80141 (N.D. Ga. June 7, 2013).  Here, the attesting officer, Officer Murdock devoted five lengthy paragraphs to discussing limitations with using confidential informants, cooperating sources, or undercover agents. [Doc. 1467-1 at 42-45, ¶¶ 60-64.]  He explained that sources' value was limited because they had no direct ties to the Gangster Disciples organization, and specifically explained the limitations that law enforcement encountered with two confidential human sources.  [*Id.* at 42-43, ¶ 60.]  He additionally explained the difficulty that confidential human sources encountered in attempting to associate themselves with other alleged members of the organization.  [*Id.* at 43, ¶ 62.]  He also discussed, at length, how law enforcement had used an undercover employee

43

had some degree of success with infiltrating the organization, but that the individual's ability to gain access was limited. [*Id.* at 44-45, ¶ 63.] Given the detail set forth in Officer Murdock's affidavit, the Court cannot agree that the government has failed to provide sufficient information regarding the use of confidential human sources during its investigation. *See Dooley*, 2013 U.S. Dist. LEXIS 81225, at *55-57; *Flores*, 2007 WL 2904109, at *29 (rejecting argument that wiretap affidavit was invalid due to purported "boilerplate" language).

For these reasons, it is **RECOMMENDED** that Sadiki-Yisrael's Preliminary Motion to Suppress All Conversations and Evidence Seized on (TT3) Pursuant to Court Ordered Electronic Interceptions [Doc. 1419] be **DENIED**.

## IX. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Sadiki-Yisrael's Motion for Specific *Brady* Information [Doc. 1417] be **DENIED AS MOOT**.  It is also **RECOMMENDED** that Defendant's Motion to Reopen Evidence Regarding Motion to Suppress Evidence [Doc. 1413]; Motion to Suppress Evidence and Request for Hearing Under *Franks v. Delaware* [Doc. 1414]; Motion to Strike or Dismiss the Enhanced Sentencing Provisions Listed in Count One [Doc. 1415]; Motion to Dismiss or Strike Overt Acts 1 and 3 of Count One Due to Denial of Speedy Trial [Doc. 1416]; Motion for Return of Property [Doc. 1418]; and

Preliminary Motion to Suppress All Conversations and Evidence Seized on (TT3) Pursuant to Court Ordered Electronic Interceptions [Doc. 1419] be **DENIED**.

There are no matters pending for Defendant Sadiki-Yisrael, and the Court has not been advised of any impediments to the scheduling of a trial as to this defendant.  Accordingly, this matter as to this defendant is **CERTIFIED READY FOR TRIAL.**

IT IS SO ORDERED and RECOMMENDED this 24th day of May, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge